ORIGINAL GRASSO CONSTRUCTION COMPANY, INC. *v.* JOHN SHEPHERD
(AC 21679)
(AC 21925)

Schaller, Mihalakos and Flynn, Js.

Argued February 22—officially released June 11, 2002

*James H. Lee*, for the appellant-appellee (defendant).

*Neal L. Moskow*, with whom, on the brief, was *Deborah M. Garskof*, for the appellee-appellant (plaintiff).

Opinion

MIHALAKOS, J. This opinion concerns two separate appeals, which have been consolidated, involving the same parties. In the first appeal, AC 21679, the defendant, John Shepherd, appeals from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, Original Grasso Construction Company, Inc. (Original Grasso).[1] In his statement of the issues, the defendant claims that the court improperly (1) sustained the conclusion of the attorney trial referee (referee) that an unsigned proposal embodied the contract between the parties and (2) accepted the referee's report. In the second appeal, AC 21925, Original Grasso appeals from the court's denial of an award of attorney's fees relating to the underlying contract action. On appeal, the plaintiff claims that the court improperly denied it reasonable attorney's fees, which are provided for in General Statutes § 52-249. We affirm the judgment of foreclosure by sale in AC 21679 and reverse the judgment denying attorney's fees in AC 21925.

The predicate facts and procedural history involved in both appeals are as follows. The defendant is the owner of a horse boarding and riding facility known as Lion Hill Farm (Lion Hill) located in Easton. In early 1997, the defendant communicated to the plaintiff his desire to have certain construction work performed at Lion Hill. After months of negotiation, the plaintiff

---

[1] On March 8, 2001, the plaintiff filed a cross appeal regarding attorney's fees. On May 10, 2001, this court granted the defendant's motion to dismiss the cross appeal and, sua sponte, granted the plaintiff permission to file a late appeal. Although the cases have been briefed and argued separately, we address them together because they are based on the same record.

presented to the defendant a quote, dated April 10, 1997, outlining the work to be done.

The plaintiff began construction in May, 1997. After the relationship between the parties deteriorated, the defendant hired a third party to complete the project and neglected to inform the plaintiff of that fact. In October, the plaintiff provided the defendant with a final invoice in the amount of $14,620.33, representing the remaining balance due under the contract and for additional work performed.

The plaintiff recorded a mechanic's lien against the property on the Easton land records. Thereafter, the plaintiff sought to foreclose the mechanic's lien. The defendant filed an answer, special defenses and a counterclaim for damages alleging that the plaintiff had failed to complete the riding ring in a timely manner resulting in lost income to the defendant. The matter was tried before a referee on March 10, 1999, and post-trial briefs were filed by March 31, 1999.

On July 29, 1999, the referee filed his report recommending that judgment enter in favor of the plaintiff on the complaint in the amount of $14,620.33 plus costs and interest, and that judgment enter in favor of the plaintiff on the special defenses and counterclaim. In addition, the report recommended that each party pay his or its own attorney's fees.

On August 10, 1999, the parties each filed a motion to correct the report, which the referee summarily denied. Thereafter, the defendant objected to the acceptance of the report, and the plaintiff opposed the objection. On July 7, 2000, the court remanded the matter to the referee with direction to amend the report to state the subordinate facts necessary to support $6244 of the recommended damages award. In response to the court's order, the referee filed an amendment incorporating the report and making additional findings of fact

to support the $6244. The defendant filed motions for rejection of the report and for referral of the matter to a different attorney trial referee.

On September 28, 2000, the court accepted the report and rendered judgment accordingly. On December 13, 2000, the plaintiff filed a motion for strict foreclosure of the mechanic's lien. The court, however, rendered judgment of foreclosure by sale on February 26, 2001. These appeals followed. Additional facts will be set forth as necessary.

I

DEFENDANT'S APPEAL

The defendant claims that the court improperly sustained the referee's conclusion that the unsigned proposal embodied the contract between the parties. In addition, he claims that the court improperly remanded the matter to the same attorney trial referee rather than either accepting the report or rejecting the report and revoking the referral. We address each claim seriatim.

A

The defendant poses three arguments to support his claim that the court improperly sustained the referee's conclusion that the unsigned proposal embodied the contract. He first argues that (1) the evidence does not support finding number thirteen of the report, (2) the referee's additional findings do not support the conclusion that the proposal is the contract and (3) if the proposal is the contract, that contract and the findings made do not support the award of damages. The defendant's first contention is that the referee's finding that paragraph D of the April 10, 1997 quote encompassed the parties' agreement regarding the scope of the work to be done was clearly erroneous. He further contends that the referee's additional findings do not support the conclusion that the proposal is the contract. In the

alternative, the defendant argues that the findings do not support the damages awarded to the plaintiff. We disagree.

Our review of an attorney trial referee's findings of facts is extremely limited. "[Our Supreme Court] has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court." (Internal quotation marks omitted.) *Killion* v. *Davis*, 257 Conn. 98, 102, 776 A.2d 456 (2001). Indeed, "[a]ttorney trial referees are empowered to hear and decide issues of fact." (Internal quotation marks omitted.) *Anastasia* v. *Beautiful You Hair Designs, Inc.*, 61 Conn. App. 471, 475, 767 A.2d 118 (2001). Neither this court, nor the trial court, may substitute its findings for those of the referee. See *Killion* v. *Davis*, supra, 102. Our task is to determine whether the evidence supports the facts set forth in the report. See id.

"[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Hoye* v. *DeWolfe Co.*, 61 Conn. App. 558, 562, 764 A.2d 1269 (2001). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Shapero* v. *Mercede*, 66 Conn. App. 343, 347, 784 A.2d 435, cert. granted on other grounds, 258 Conn. 944, 786 A.2d 430 (2001). "While the reports of [attorney trial referees] in such cases are essentially of an advisory nature, it

has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact thus found." (Internal quotation marks omitted.) *Killion* v. *Davis*, supra, 257 Conn. 102. "The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." (Internal quotation marks omitted.) *Anastasia* v. *Beautiful You Hair Designs, Inc.*, supra, 61 Conn. App. 475.

"Although it is true that when the trial court reviews the attorney trial referee's report the trial court may not retry the case and pass on the credibility of the witnesses, the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) *Killion* v. *Davis*, supra, 257 Conn. 102. "Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the [attorney trial] referee." (Internal quotation marks omitted.) *Anastasia* v. *Beautiful You Hair Designs, Inc.*, supra, 61 Conn. App. 475.

"To be enforceable, an agreement must be definite and certain as to its terms and requirements. . . . Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of facts." (Internal quotation marks omitted.) *Sivilla* v. *Philips Medical Systems of North America, Inc.*, 46 Conn. App. 699, 708, 700 A.2d 1179 (1997). A fact finder's determination of whether a contract existed must be based on all of the evidence. Furthermore, "[t]o form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties.

. . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . Because the . . . claim involves a finding of fact, we must adhere to the long-standing principle that findings of fact are ordinarily left undisturbed upon judicial review." (Internal quotation marks omitted.) *Lussier* v. *Spinnato*, 69 Conn. App. 136, 140, 794 A.2d 1008 (2002).

"A manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined." (Internal quotation marks omitted.) *Sivilla* v. *Philips Medical Systems of North America, Inc.*, supra, 46 Conn. App. 709. "Parties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated." *Hoye* v. *DeWolfe Co.*, supra, 61 Conn. App. 563–64. In addition, "[w]hat the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." (Internal quotation marks omitted.) *Suburban Sanitation Service, Inc.* v. *Millstein*, 19 Conn. App. 283, 287, 562 A.2d 551 (1989).

The defendant focuses his argument on finding number thirteen of the report, which states: "The return of the document to the plaintiff together with a check indicates the defendant's intent to engage the plaintiff to perform at least the portion of the work described in paragraph D,[2] 'Riding Ring Reconstruction.' The lack

[2] Paragraph D of the plaintiff's exhibit A outlined the specifications for the riding ring reconstruction that would cost $57,600. The quote states in relevant part: "Work included:

"1. To remove existing wood fence and dispose.

"2. To excavate and remove existing sub base materials and haul to onsite location.

"3. To subgrade ring pitching all water towards existing swale and compact with a 20 ton vibrating roller.

"4. To regrade existing slope and swale on west side of ring and reseed.

"5. To supply and install 8" of 3/4" I-4" and compact with a 20 ton vibrat-

of any change or attempted change to any of the provisions of exhibit A, together with the lack of any indication otherwise, written, oral or testimonial by the defendant may be and is taken as the defendant's agreement to the terms, if not all of the quoted work, set forth in exhibit A."

The following additional facts, as found by the referee, are relevant to our disposition of the defendant's claim. In January, 1997, the parties began negotiating regarding construction work to be performed at Lion Hill, including reconstructing the existing riding ring. On April 10, 1997, the plaintiff forwarded to the defendant a quote outlining the work to be done. The defendant returned to the plaintiff an unsigned copy of the quote accompanied by a check in the amount of $10,000 containing "Ring const" in the memo field. Thereafter, the plaintiff began construction on the riding ring in accordance with paragraph D of the quote. The defendant paid to the plaintiff $43,200 for work on the riding ring and $32,781.38 for extra work outside the contract.

The referee found that there existed a contract between the parties and that the terms were set forth in paragraph D of the quote. Our review of the record persuades us that the findings of the referee, as expressed in his report, are sufficiently supported by the record. The parties negotiated the terms of their agreement for months prior to the plaintiff submitting a quote to the defendant. The plaintiff manifested its intention to enter into a contract by forwarding to the defendant the quote outlining the terms of the agreement. Upon receipt of the quote, the defendant forwarded $10,000 to the plaintiff representing a deposit toward work to be done on the riding ring. The defen-

---

ing roller.

"6. To supply and install 4" of screen sand and stone dust mixture (specification to be supplied by owner).

"7. To construct a field stone wall on the east side of ring to retain slope."

dant made additional payments to the plaintiff as the work on the ring progressed. Although there was no evidence that the defendant signed the quote, the payments to the plaintiff were sufficient to manifest his intent to enter into the contract. In addition, the defendant's testimony regarding his expectations was consistent with the terms outlined in paragraph D of the proposal.

We conclude that the referee's finding number thirteen is fully supported by the evidence and, therefore, is not clearly erroneous. Consequently, the referee's additional findings, coupled with finding number thirteen, do support the conclusion that paragraph D of the unsigned proposal encompasses the terms of the contract. Thus, the defendant's second argument also must fail.

The defendant's alternative argument that if the proposal does encompass the terms of the contract, then it and the findings based thereon do not support the award of damages also has no merit. The defendant does not contest the manner in which the referee calculated the damages.[3] He does claim, however, that the factual findings of the referee underlying the damages award were not supported by the evidence.

"In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss

---

[3] We agree that the referee applied the proper legal standard when he assessed the plaintiff's claim of damages. "It is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed. . . . The injured party, however, is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain. . . . Guarding against excessive compensation, the law of contract damages limits the injured party to damages based on his actual loss caused by the breach." (Internal quotation marks omitted.) *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 742, 793 A.2d 1118 (2002).

to the injured party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous." (Internal quotation marks omitted.) *Maloney* v. *PCRE, LLC,* 68 Conn. App. 727, 741, 793 A.2d 1118 (2002).

The referee found that the work described in paragraph D of the quote had a value of $49,200, and the defendant paid only $43,300, leaving a balance due of $6000. He further found that the work performed outside the parameters of paragraph D had a value of $35,157.71, for which the defendant had paid $32,781.38, leaving an additional balance due of $2376.33. In addition to the two sums found owed, the referee found that the plaintiff had performed additional work between September 5 and 9, 1997, which had a value of $6244. After reviewing the record and the testimony of the parties, we conclude that the evidence supported the $14,620.33 in damages awarded to the plaintiff.

B

The defendant's second claim is that the court improperly remanded the case to the same attorney trial referee for additional findings of fact more than one year after the hearing. He argues that pursuant to Practice Book § 19-17, the court was restricted to one of two choices, namely, either (1) accept the report or (2) reject the report and revoke the referral. We disagree.

Resolution of the defendant's claim requires us to examine three rules of practice, Practice Book § 19-4,[4] which pertains to deadlines for filing a report, Practice

[4] Practice Book § 19-4 provides: "An attorney trial referee to whom a case has been referred shall file a report with the clerk of the court, with sufficient copies for all counsel, within one hundred and twenty days of the completion of the trial before such referee."

Book § 19-11,[5] which pertains to amendments to a report, and Practice Book § 19-17,[6] which pertains to the function of the court. That examination requires us to apply our well settled principles of statutory construction. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *HUD/Willow Street Apartments* v. *Gonzalez*, 68 Conn. App. 638, 647, 792 A.2d 165 (2002).

"The rules of statutory construction apply with equal force to Practice Book rules. . . . Where the meaning of a statute [or rule] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction. . . . A cardinal rule of statutory construction is that where the words of a statute [or rule] are plain and unambiguous the intent of the [drafters] in enacting the statute [or rule] is to be derived from the words used. . . . Where the court is provided with a clearly written rule, it need look no further for interpretive guidance." (Citation omitted; internal quotation marks omitted.) *Schiappa* v. *Ferrero*, 61 Conn. App. 876, 882, 767 A.2d 785 (2001).

The language of the relevant rules of practice is not ambiguous. There is nothing in the language of Practice

---

[5] Practice Book § 19-11 provides: "A committee or attorney trial referee may, at any time before a report is accepted, file an amendment to it or an amended report."

[6] Practice Book § 19-17 provides in relevant part: "(a) The court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court.

"(b) The court may correct a report at any time before judgment upon the written stipulation of the parties or it may upon its own motion add a fact which is admitted or undisputed or strike out a fact improperly found."

Book § 19-17 that prohibits the court from remanding the matter to the same attorney trial referee for clarification of the report without first rejecting the report. Contrary to the defendant's contention, the court is mandated to reject the report only if it finds that the referee has "materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted . . . ." Practice Book § 19-17; see also *Hassane* v. *Lawrence*, 31 Conn. App. 723, 727, 626 A.2d 1336 (1993).[7] Moreover, an attorney trial referee may amend the report at *any time* before it is accepted. (Emphasis added.) Practice Book § 19-11; cf. *Pilato* v. *Kapur*, 22 Conn. App. 282, 284, 576 A.2d 1315 (after rejecting report for application of incorrect standard of law, court should remand to same attorney trial referee for determination of whether interest is appropriate because attorney trial referee is most familiar with facts), cert. granted on other grounds, 216 Conn. 813, 580 A.2d 59 (1990) (appeal withdrawn).

In the present case, the court did not find that the referee materially erred in his rulings, nor did it find any other reason to reject the report. As in *Hassane*, the court "merely asked the trial referee to clarify his report by stating the basis of the awards. The court, in effect, declared that it could not determine whether to accept or reject the report without knowing the basis of the trial referee's decision." *Hassane* v. *Lawrence*, supra, 31 Conn. App. 727. Therefore, the court was not required to reject the report and properly remanded the matter to the same attorney trial referee for additional

---

[7] The defendant heavily relies on this court's decision in *Schiappa* v. *Ferrero*, supra, 61 Conn. App. 876. He appears to argue that the report was untimely because the amendment to the report was not filed until well after the 120 day deadline for filing the report had expired. His reliance is misplaced. In *Schiappa*, no report was filed within the 120 day deadline. See id., 878. In the present case, it is undisputed that the first report was filed on the one hundred twentieth day. Therefore, *Schiappa* is inapposite to the case at hand.

findings of fact to support the conclusions. See Practice Book § 19-11.

## II

## PLAINTIFF'S APPEAL

The sole issue involved in the plaintiff's appeal is whether the court properly denied it attorney's fees. The plaintiff claims that whether it was entitled to attorney's fees pursuant to § 52-249[8] is a question of law for the court to decide in the foreclosure action. We agree.

The following additional facts and procedural history are relevant to our disposition of the plaintiff's appeal. On February 22, 2001, the plaintiff filed an updated affidavit of attorney's fees seeking $8325. In its March 1, 2001 memorandum of decision, the court denied the plaintiff's request for attorney's fees relating to the underlying action, but awarded $675 to the plaintiff for attorney's fees in the foreclosure action. The court concluded that the plaintiff's "remedy for obtaining attorney's fees in the underlying action existed up to the time that judgment was entered accepting the [attorney trial referee's] report. Thus, the plaintiff's entitlement to attorney's fees and enforcing payment under the contract between the parties has already been adjudicated. Its attorney's fees are thereby limited to those which are associated exclusively with postjudgment services." The court reasoned that the plaintiff "makes no claim that the trial of the underlying mechanic's lien constituted a 'hearing on an issue of fact' within the meaning of [§ 52-249]."

[8] General Statutes § 52-249 (a) provides in relevant part: "The plaintiff in any action of foreclosure of a mortgage or lien, upon obtaining judgment of foreclosure, when there has been a hearing as to the form of judgment or the limitation of time for redemption, shall be allowed the same costs, including a reasonable attorney's fee, as if there had been a hearing on an issue of fact. . . ."

The issue before the court was whether the plaintiff was entitled to attorney's fees incurred in the litigation of the contract dispute pursuant to § 52-249.[9] "The question of whether a particular statute . . . applies to a given state of facts is a question of statutory interpretation . . . . Statutory interpretation presents a question of law for the court." (Citation omitted; internal quotation marks omitted.) *Meadows* v. *Higgins,* 49 Conn. App. 286, 291, 714 A.2d 51 (1998), rev'd on other grounds, 249 Conn. 155, 733 A.2d 172 (1999). Our review is, therefore, plenary. *State* v. *Corona,* 69 Conn. App. 267, 276, 794 A.2d 565 (2002).

"Connecticut case law follows the general rule, frequently referred to as the 'American Rule,' that attorney's fees are not allowed to the prevailing party as an element of damages unless such recovery is allowed by statute or contract. . . . General Statutes § 52-249 (a) succinctly and unambiguously provides for the allowance of attorney's fees in actions for foreclosure of mortgages or liens." (Citation omitted.) *A. Secondino & Son, Inc.* v. *LoRicco,* 19 Conn. App. 8, 15–16, 561 A.2d 142 (1989).

In addition, § 52-249 provides that the plaintiff may be awarded attorney's fees in an action to foreclose a lien *"upon obtaining judgment of foreclosure . . . ."* (Emphasis added.) General Statutes § 52-249 (a). According to § 52-249, the plaintiff must argue for attorney's fees during the foreclosure action. Therefore, the court's conclusion that the plaintiff's remedy for obtaining attorney's fees in the contract action was extinguished at the time it rendered judgment was an improper application of the law.

Furthermore, the plaintiff could not present evidence of attorney's fees to the referee because the referee possesses no authority to determine questions of law. "An attorney trial referee does not exercise the powers

---

[9] The plaintiff does not claim that it is entitled to attorney's fees pursuant to the contract. In fact, the record is devoid of any reference to that effect.

of a court and is simply a fact finder." *Liberty Plumbing Supply Co.* v. *Paul S. Yoney, Inc.*, 41 Conn. App. 594, 597, 677 A.2d 13 (1996). "Any legal conclusions reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." (Citation omitted; internal quotation marks omitted.) *State Bank of Westchester* v. *New Dimension Homes of Connecticut, Inc.*, 38 Conn. App. 491, 497, 661 A.2d 119 (1995).

In his report, the referee found that the "plaintiff offered no evidence of the amount of attorney's fees incurred and therefore has waived any claim for attorney's fees." That finding is in complete derogation of § 52-249. Section 52-249 (a) mandates that the plaintiff in a foreclosure action shall be allowed reasonable attorney's fees "when there has been a hearing as to the form of judgment" during the foreclosure action.

Because the question as to whether the plaintiff is entitled to attorney's fees pursuant to § 52-249 is a question of law, an attorney trial referee cannot decide the issue. We therefore hold that the court in the foreclosure action must determine whether a party is entitled to attorney's fees pursuant to § 52-249 that were incurred in the litigation of the underlying action.

The judgment in AC 21679 is affirmed. The judgment in AC 21925 is reversed as to the denial of attorney's fees and that matter is remanded for determination of whether and to what extent the plaintiff may be entitled to attorney's fees pursuant to § 52-249.

In this opinion the other judges concurred.